# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

LESSIE TILLMAN,

        Plaintiff,

vs.                                   Case No.  3:13-cv-222-J-34JBT

C.R. BARD, INC. and BARD
PERIPHERAL VASCULAR, INC.,

        Defendants.

_____/

## **O R D E R**

**THIS CAUSE** is before the Court on Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s Objection to, and Motion to Set Aside, Magistrate's Order Denying Defendants' Motion for Protective Order (Doc. 83; Objections) filed on April 11, 2014. Pursuant to Rule 72, Federal Rules of Civil Procedure (Rule(s)), and 28 U.S.C. § 636, Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.[1] object to the Order (Doc. 81; Order) entered by the Honorable Joel B. Toomey, United States Magistrate Judge, on March 28, 2014. In the Order, Magistrate Judge Toomey denied Defendants' Motion for Protective Order (Doc. 29; Motion for Protective Order). See Order at 23. Bard contends that the Magistrate Judge's Order is contrary to law and requests that this Court reverse the Order. See Objections at 1. Plaintiff Lessie Tillman (Tillman) responded to the Objections on June 13, 2014. See Plaintiff's Response to Defendants' Objection to, and Motion to Set Aside,

---

[1] The Court will refer to the Defendants collectively in the singular as "Bard."

Magistrate's Order Denying Defendants' Motion for Protective Order (Doc. 89; Response to Objections).  In support of its Objections, Bard also filed several notices of supplemental authority.  <u>See</u> Defendants' C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s Notice of Supplemental Authority in Support of Objection to, and Motion to Set Aside, Magistrate's Order Denying Defendants' Motion for Protective Order (Docs. 86, 87, 115, 140).

## I.   Standard of Review

Inasmuch as the Magistrate Judge's March 28, 2014 Order on Defendants' Motion for Protective Order does not dispose of a claim or defense of any party, it is a nondispositive order.  <u>See</u> <u>Smith v. Sch. Bd. of Orange Cnty.</u>, 487 F.3d 1361, 1365 (11th Cir. 2007) (per curiam).  As such, to prevail in its Objections, Bard must establish that the conclusions to which it objects in the Order are clearly erroneous or contrary to law.  <u>See</u> Rule 72(a); 28 U.S.C. § 636(b)(1)(A); <u>see also</u> <u>Merritt v. Int'l Bhd. of Boilermakers</u>, 649 F.2d 1013, 1016-17 (5th Cir. Unit A June 1981);[2] <u>Nat'l Ass'n for the Advancement of Colored People v. Fla. Dep't of Corrs.</u>, 122 F. Supp. 2d 1335, 1337 (M.D. Fla. 2000); <u>Williams v. Wright</u>, No. 3:09-cv-055, 2009 WL 4891825, at *1 (S.D. Ga. Dec.16, 2009) ("A district court reviewing a magistrate judge's decision on a nondispositive issue 'must consider . . . objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.'") (quoting Rule 72(a)).[3]  "Clear error is a highly deferential standard of review."  <u>Holton v. City of Thomasville</u>

---

[2]     In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[3]     "Although an unpublished opinion is not binding . . ., it is persuasive authority." <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

<u>Sch. Dist.</u>, 425 F.3d 1325, 1350 (11th Cir. 2005) (citation omitted).  "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>Id.</u> (citations and quotations omitted); <u>see also</u> <u>Weeks v. Samsung Heavy Indus. Co., Ltd.</u>, 126 F.3d 926, 943 (7th Cir. 1997) ("The clear error standard [under Rule 72(a) and 28 U.S.C. § 636(b)(1)(A)] means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made."). A magistrate judge's order "is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" <u>Botta v. Barnhart</u>, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007) (quoting <u>Catskill Dev., L.L.C. v. Park Place Entm't Corp.</u>, 206 F.R.D. 78, 86 (S.D.N.Y. 2002); <u>see also</u> <u>Pigott v. Sanibel Dev., LLC</u>, Civil Action No. 07-0083-WS-C, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008) (similar) (citation omitted); <u>Schaaf v. SmithKline Beecham Corp.</u>, Civil Action No. 1:04-cv-2346-GET, 2008 WL 489010, at *3 (N.D. Ga. Feb. 20, 2008) (similar) (citation omitted).[4]  Moreover, a magistrate judge is afforded broad

---

[4]    The Court notes some authority that the "contrary to law" standard invites plenary review of a magistrate judge's legal conclusions.  <u>See</u> <u>e.g.</u>, <u>Haines v. Liggett Grp., Inc.</u>, 975 F.2d 81, 91 (3d Cir. 1992); <u>Milwaukee Carpenter's Dist. Council Health Fund v. Philip Morris, Inc.</u>, 70 F. Supp. 2d 888, 892 (E.D. Wis. 1999); <u>Computer Econ., Inc. v. Gartner Grp., Inc.</u>, 50 F. Supp. 2d 980, 983 & n.2 (S.D. Cal. 1999).  In this Circuit, however, the "contrary to law" standard has been distinguished as more deferential than <u>de novo</u> review.  <u>See</u> <u>Merritt</u>, 649 F.2d at 1016-17 ("[A] magistrate['s] nondispositive orders] are reviewable under the 'clearly erroneous and contrary to law' standard; they are not subject to a de novo determination as are a magistrate's proposed findings and recommendations.").  Nonetheless, even to the extent the "contrary to law" standard may invite some level of plenary review, it is evident that because a magistrate is afforded broad discretion as to discovery matters, reversal as to a magistrate's discovery-related order is appropriate only where that discretion is abused.  <u>See generally</u> <u>Johnson v. Bd. of Regents of the Univ. of Ga.</u>, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pretrial activities, including discovery and scheduling."); <u>Botta</u>, 475 F. Supp. 2d at 185; <u>Doe v. Hartford Life & Accident Ins. Co.</u>, 237 F.R.D. 545, 547-48 (D.N.J. 2006); <u>Doe v. Marsh</u>, 899 F. Supp. 933, 934 (N.D.N.Y. 1995); <u>see also</u> CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3069 (2d ed. 1997) ("Regarding legal issues, the language 'contrary to law' appears to invite plenary review.  But many matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis.").

discretion in issuing nondispositive pretrial orders related to discovery such as the March 28, 2014 Order.  See Tracy P. v. Sarasota Cnty., No. 8:05-CV-927-T-26EAJ, 2007 WL 1364381, at *2 (M.D. Fla. May 9, 2007); see also Rule 6.01(c)(18), Local Rules, United States District Court, Middle District of Florida (Local Rule(s)) (authorizing magistrate judges to supervise and determine pretrial proceedings and motions in civil cases, including discovery motions).

## II.    Background & Summary of the Arguments

Bard's Motion for Protective Order concerns a report prepared for Bard by Dr. John Lehmann in which he sets out the results of his investigation into Bard's inferior vena cava (IVC) filters.  See Motion for Protective Order at 1-2; Plaintiff's Opposition to Defendants' Motion for Protective Order and Brief in Support Thereof (Doc. 33; Response to Motion), Ex. 1 (Lehmann Report).  In the Motion for Protective Order, Bard maintained that the Lehmann Report is protected by the attorney-client privilege and work-product doctrine.  See Motion for Protective Order at 1.  As such, Bard asked the Court to order Tillman to destroy any copies of the Lehmann Report in her possession and to prohibit Tillman from using the Lehmann Report in prosecuting this case.  See id. at 10-11.  The Magistrate Judge determined that the Lehmann Report was not protected by either of these doctrines, and denied the Motion for Protective Order.  See Order at 21-23.  Because the Magistrate Judge's Order sets forth in detail the background of this litigation, the facts underlying Bard's Motion for Protective Order, and the relevant evidence, the Court will not further summarize the factual background here.

In its Objections, Bard contends that the Magistrate Judge applied an incorrect legal standard in determining that the Lehmann Report was not protected by the work-product

doctrine.[5]  See Objections at 5.  Specifically, the Magistrate Judge determined that to be entitled to work-product protection, "'the primary motivating purpose behind the creation of the document'" must be to aid in possible litigation.  See Order at 11 (quoting United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. Unit A Feb. 1981)).  According to Bard, the "primary purpose" test set forth in Davis is mere dicta, and therefore, not binding on this Court.  See Objections at 6.  Moreover, Bard maintains that prior binding precedent precludes the application of this standard.  Id. at 9-10 (citing Hoover v. U.S. Dep't of the Interior, 611 F.2d 1132, 1139 n.8 (5th Cir. 1980)).  Bard asserts that the Magistrate Judge should have applied the "because of" formulation of the work product analysis adopted by a majority of other circuits, not the "primary purpose" test.  Id. at 11-12.  Under the "because of" standard, a document is protected as work-product where it "'can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  See id. at 5 (quoting Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 698 (S.D. Fla. 2007)).  Bard argues that "[h]ad the Magistrate [Judge] applied the 'because of' standard," he would have found that the Lehmann Report was protected work-product.  See id. at 14.  In support, Bard cites to decisions in which other courts have found the Lehmann Report to be protected work-product applying the "because of" standard.  See Carr v. C.R. Bard, Inc., 297 F.R.D. 328, 331-33 (N.D. Ohio 2014); Phillips v. C.R. Bard, Inc., 290 F.R.D. 615, 635-36, 670-71 (D. Nev. 2013); Defendants' Reply to Plaintiff's Objection and Response to Defendants' Filing of Supplemental Authority Regarding Motion for Protective Order (Doc. 68), Ex. 1 (collecting decisions of Arizona state

---

[5] Bard does not object to the Magistrate Judge's conclusion that the Lehmann Report is not protected by the attorney-client privilege, and thus, the Court will not address that portion of the Order.

courts finding the Lehmann Report to be protected work-product); <u>Ebert v. C.R. Bard, Inc.</u>, No. 12-01253 (E.D. Penn. Apr. 24, 2014) (Doc. 86-1); <u>Cason v. C.R. Bard, Inc.</u>, No. 1:12-CV-1288-MHS (N.D. Ga. May 12, 2014) (Doc. 87-1); <u>see</u> <u>also</u> <u>Alexander v. C.R. Bard, Inc.</u>, No. 3:12-CV-5187-O-BK (N.D. Tex. Aug. 20, 2014) (Doc. 115) (finding the Lehmann Report to constitute protected work-product under the "primary purpose" standard); <u>Jones v. C.R. Bard, Inc.</u>, No. 3:13-CV-599-K (BF) (N.D. Tex. Sept. 15, 2015) (Doc. 140-1) (same).  As such, Bard contends that the Court should find that the Magistrate Judge's Order is contrary to law and set it aside.

In her Response, Tillman maintains that the "because of" standard still requires an inquiry into "the when, why, <u>and for what primary purpose</u> a document was created."  <u>See</u> Response to Objections at 5.  As such, Tillman contends that the <u>substance</u> of the Magistrate Judge's analysis encompasses both the "primary purpose" and the "because of" standards and finds that Bard has failed to demonstrate that the Report is protected work-product under either standard.  <u>Id.</u>  Based on the Magistrate Judge's factual findings, Tillman argues that Bard has failed to meet its burden to justify the protection of the Lehmann Report, and has "failed to demonstrate that Magistrate Judge Toomey's ruling is contrary to law . . . ."  <u>Id.</u> at 8.

## III.    Discussion

Upon review, the Court observes that some district courts within the Eleventh Circuit have moved away from applying the "primary purpose" test based on an interpretation of <u>Davis</u> as dicta, and identification of <u>Hoover</u> as potentially contradictory prior precedent.  <u>See</u> <u>Regions Fin. Corp. v. United States</u>, No. 2:06-CV-00895-RDP, 2008 WL 2139008, at

*3-4 (N.D. Ala. May 8, 2008) (citing United States v. Adlman, 134 F.3d 1194, 1198-1203 (2d Cir. 1998)); United States v. Gericare Med. Supply Inc., No. CIV.A.99-0366-CB-L, 2000 WL 33156442, at *2 (S.D. Ala. Dec. 11, 2000); see also Jones v. Tauber & Balser, P.C., 503 B.R. 510, 515 n.3 (N.D. Ga. Aug. 26, 2013); Adams v. City of Montgomery, 282 F.R.D. 627, 634 (M.D. Ala. 2012).  Nonetheless, the Eleventh Circuit Court of Appeals has not yet considered the issue and many courts in this district still apply the primary purpose standard.  See Hancock Bank v. Hill Street, L.L.C., No. 3:13-cv-71-J-25MCR, 2013 WL 6815055, at *6 (M.D. Fla. Dec. 24, 2013);  Everbank v. Fifth Third Bank, No. 3:10-cv-1175-J-12TEM, 2012 WL 1580778, at *3 (M.D. Fla. May 4, 2012); Every Penny Counts, Inc. v. Am. Express Co., No. 8:07-cv-1255-T-26MAP, 2008 WL 2074407, at *2 (M.D. Fla. 2008); U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., 630 F. Supp. 2d 1332, 1337 (M.D. Fla. 2007) ("The determinative question is whether the prospect of litigation was the primary motivating purpose behind the creation of a particular document."); Lockheed Martin Corp. v. L-3 Commc'ns Corp., No. 6:05-cv-1580-Orl-31KRS, 2007 WL 2209250, at *9 (M.D. Fla. July 29, 2007); see also Bridgewater v. Carnival Corp., 286 F.R.D. 636, 641 (S.D. Fla. 2011).  Notably, some authorities appear to equate or blend the two standards as Tillman does.  See Montgomery Cnty. v. MicroVote Corp., 175 F.3d 296, 305-06 (3d Cir. 1999) (Greenberg, C.J., concurring); United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990); see also Adams, 282 F.R.D. at 634; Spirit Master Funding, LLC v. Pike Nurseries Acquisition, LLC, 287 F.R.D. 680, 685 (N.D. Ga. 2012).

Thus, while some courts have criticized the "primary purpose" test, upon review of the case law cited in the Magistrate Judge's Order, and in light of the split of authority, the Court

does not find that the Order is "contrary to law."  See Ruskin Co. v. Greenheck Fan Corp., No. 08-CV-60902, 2009 WL 383349, at *2 (S.D. Fla. Feb. 12, 2009); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Donaldson Co., Inc., No. 10–4948 (JRT/JJG), 2014 WL 2865900, at *5 (D. Minn. June 24, 2014).  Significantly, the Court is not convinced that the decision in Hoover precludes the application of the primary purpose test under these circumstances.[6] The Hoover court briefly considered, in a single footnote, whether an appraisal report concerning property the government sought to acquire was prepared "in anticipation of litigation."  Id. at 1139 n.8.  The court noted that "[i]t is clear that the appraisal report was prepared in anticipation of litigation," because "the government must necessarily anticipate that negotiations for purchase will fail, thereby requiring condemnation."  Id.  The court then stated that "[a]ppraisals are therefore obtained both for the purpose of providing a basis for an offer, and to support a claim of just compensation at a subsequent condemnation suit." Id.  As such, it appears that the Hoover court viewed the litigation purpose of the appraisal to be at least intertwined with and inseparable from the business purpose of the document. The decision contains no analysis of the appropriate test for determining whether a document is created "in anticipation of litigation" where the prospect of litigation is not imminent, or where a business purpose is a separate and primary reason for the document's creation.  Thus, because the Hoover court does not indicate which purpose it viewed as the

---

[6]     Notably, although Tillman referenced the "primary purpose" standard in her Response, see Response to Motion at 15, Bard did not argue in its reply before the Magistrate Judge that the "primary purpose" test is precluded by prior binding precedent.  See generally Defendants' Reply in Support of Motion for Protective Order (Doc. 36).

"primary" reason for the creation of the appraisal report, this Court will not interpret the decision in such a way as to conflict with the standard set forth in <u>Davis</u>.[6]

Moreover, even under the "because of" standard, the Magistrate Judge's decision that the Lehmann Report is not protected work-product is not clearly erroneous or contrary to law. In <u>Adlman</u>, the Second Circuit describes the "because of" standard as warranting protection where "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained <u>because of</u> the prospect of litigation.'" <u>See</u> <u>Adlman</u>, 134 F.3d at 1202 (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 <u>Federal Practice & Procedure</u> § 2024, at 343 (1994)).[7]   However, under this formulation "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" are still not protected.  <u>Id.</u>  Indeed, "[e]ven if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created 'because of' actual or impending litigation."  <u>Id.</u>  As such, a court must determine what purpose was the "'driving force'" behind the creation of the document.  <u>See</u> <u>United States v. Roxworthy</u>, 457 F.3d 590, 595 (6th Cir. 2006) (quoting <u>Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Murray Sheet Metal Co., Inc.</u>, 967 F.2d 980, 984 (4th Cir. 1992)).

---

[6]  The Court is further persuaded that the <u>Hoover</u> decision does not preclude the application of the "primary purpose" standard given that the Fifth Circuit itself continues to apply the primary purpose standard. <u>See</u> <u>United States v. El Paso Co.</u>, 682 F.2d 530, 542 (5th Cir. 1982).

[7]  Notably, the very treatise from which the Second Circuit derives the "because of" standard goes on to explain that "[t]he focus is on whether specific materials were prepared in the ordinary course of business, or were <u>principally prompted</u> by the prospect of litigation."  <u>See</u> Wright, Miller, & Marcus, <u>supra</u>, § 2024 (emphasis added).  It is in this regard, the treatise writers explain, that a "dual purpose" document may be protected "even though a nonlitigation purpose can be ascertained."  <u>Id.</u>

Here, the Magistrate Judge thoroughly considered the "nature of the document and the factual situation" based on the evidence presented.[8]  See Order at 15-21.  The Magistrate Judge found that the content of the Lehmann Report itself did not "hint[ ] at a litigation purpose," and that the affidavit of Bard's Assistant General Counsel, Donna Passero, supports work product protection only in a "conclusory, vague, and unconvincing manner, generally employing labels rather than specific facts."  Id. at 15; see also Motion for Protective Order, Ex. 3 (Passero Affidavit).  Judge Toomey observed that the Lehmann Report, Passero Affidavit, and excerpts from a deposition of Lehmann (Doc. 57-1; Lehmann Deposition) do not contain any reference to a specific case, claim, incident, or any particular set of facts that caused concern over potential litigation.  See Order at 15-17.  The Magistrate Judge noted that both Lehmann and Passero failed to explain how the Lehmann Report was used or intended to be used to aid Bard in preparing for trial or anticipated litigation.  Id. at 16-17.  In addition, Judge Toomey found the content of the Lehmann Report "contains no legal analysis and makes no mention of ongoing or anticipated litigation," rather it "is designed to satisfy regulatory requirements and to assist corporate officers in deciding how to respond to potential issues with the Recovery Filter."  Id. at 19.  Moreover, he discusses why "documents prepared at or around the time of the Lehmann Report more convincingly show a primary broader business purpose for the Report."  Id. at 18.

The Magistrate Judge's analysis of the document and the factual circumstances surrounding its creation and his determination that the record reveals an absence of

---

[8]   Bard does not object to the Magistrate Judge's factual findings or recitation of the evidence and the Court will not conduct a de novo review of the evidence.

persuasive evidence that a litigation purpose was the "driving force" behind the creation of

the Lehmann Report is not clearly erroneous.  While other courts have given greater weight

to the statements of a litigation purpose in the Passero Affidavit and Lehmann Deposition,

Judge Toomey was permitted to make his own assessment.  His view of this evidence as

vague and conclusory was not clearly erroneous.  Moreover, Judge Toomey carefully

considered and weighed the additional evidence regarding the preparation of the Lehmann

Report, its distribution and use, and its intended purpose as of the time of its creation.  Upon

review of the relevant authority, as well as the factual findings set forth in the Order, this

Court is not left with a "definite and firm conviction that a mistake has been committed."  See

Holton, 425 F.3d at 1350.[9]  Because the Magistrate Judge's decision to deny the Motion for

Protective Order is not clearly erroneous or contrary to law, the Court will overrule Bard's

Objections.  In light of the foregoing, it is

**ORDERED:**

---

[9]  The Court acknowledges that several courts have reached a contrary conclusion.  At least some of those decisions were based on a more developed factual record than was presented to the Magistrate Judge in this case, while others were based on a similar record.  None, however, are binding on the Magistrate Judge who independently and exhaustively considered the record as a whole in reaching his determination. See Notices (Docs. 115, 140); see also Order at 22-23.  The determination of the applicability of the work product doctrine to the Lehmann Report in this case is a close call.  But on this record, and in light of the deferential standard of review applied to a magistrate judge's decision on a non-dispositive matter, the Court is not persuaded that the Order must be overturned.

Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s Objection to, and Motion to Set Aside, Magistrate's Order Denying Defendants' Motion for Protective Order (Doc. 83) is **OVERRULED AND DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, this 10th day of March, 2015.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record